IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


DONALD E. ROBINSON,                    )
                                       )
                    Plaintiff,         )    **CIVIL ACTION**
                                       )
v.                                     )    No.  10-3082-MLB
                                       )
STATE OF KANSAS,                       )
                                       )
                    Defendant.         )
_____)


## MEMORANDUM AND ORDER

### I.  INTRODUCTION

This case comes before the court on petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.)  The matter has been fully briefed and is ripe for decision.  (Doc. 22).[1]  The court has reviewed those portions of the state court record which are pertinent to the issues raised in the application and finds that an evidentiary hearing is not warranted.  Petitioner's application is DENIED for reasons set forth herein.

Petitioner was convicted of aggravated battery and second-degree murder following a jury trial in state court and sentenced to 213 months in prison.  In a federal habeas proceeding, the state court's factual findings are presumed correct and petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Petitioner does not challenge the state court's findings.  Accordingly, the court incorporates the Kansas Court of Appeal's version of the facts:

_____

[1] Petitioner has not filed a traverse and the time to file one has now passed.

Sharon Hamilton had known Donald Robinson since they were children. At some point Robinson was living for a time in the same house as Hamilton and her sister. Robinson supplied Hamilton with heroin. In August 2001, Hamilton moved in with Charles "Joe" Cyrus. Robinson came by Cyrus' house on a couple of occasions to see Hamilton.

Hamilton had been drinking and taking heroin on the evening of September 24, 2001. She had been out with Audie Suber. When Suber dropped Hamilton off at Cyrus' house, he told her that he would call her when he got home to let her know he had made it home okay. Hamilton was on the phone talking to Suber when Robinson arrived at Cyrus' house. Cyrus let Robinson into the house. Hamilton left the two men together and went to a bedroom to continue her phone conversation with Suber.

While on the phone, Hamilton heard a thump in the living room. Robinson then entered the bedroom and struck Hamilton in the back of the head with a baseball bat that Cyrus had kept beside the front door. He hit her twice more with the bat, breaking one of her fingers. Hamilton called out Robinson's name. Suber heard this over the phone and left his home immediately to return to Cyrus' house.

Robinson ran out of the house. Hamilton went into the living room and found Cyrus on the floor with the side of his face covered with blood. Hamilton called 911 and the police were dispatched to the scene at 10:54 p.m. In the meantime, Suber arrived; surveyed the scene; and, since he was on parole at the time, left before the police arrived. He did not talk to police about the incident until about 10 months later when he was back in prison for a parole violation.

When the police arrived at the scene, Hamilton told the officers Robinson had assaulted her with a baseball bat. Cyrus was taken to the University of Kansas Medical Center where he remained until his death a month later on October 26, 2001. He died from the blunt force injury to his head suffered on September 24. He never regained consciousness. Robinson was charged with intentional second-degree murder (Cyrus), and aggravated battery (Hamilton).

***

Robinson's defense was that it was Suber, not he, who committed the crimes and that Hamilton was a liar. He argued that Suber could not have made it to his house and back before the police arrived. He further claimed that on the evening of the attack he was gambling at the Argosy Casino from 10:00 p.m. and got home between 11:00 and 11:15

>p.m. A casino employee testified that Robinson's casino card had been used to enter the casino at 9:57 p.m. However, the surveillance videos from September 24 that would help identify the person using Robinson's card that night were no longer available since they are routinely recycled every 2 weeks.

State v. Robinson, No. 91,680, 2005 WL 1868889, *1-3 (Kan. Ct. App. Aug. 5, 2005)(Robinson I).

The Kansas Court of Appeals affirmed petitioner's conviction on direct appeal. Id. The Kansas Supreme Court denied review on November 2, 2005. Petitioner then sought post-conviction relief under K.S.A. 60-1507. The state district court summarily denied his petition and the Kansas Court of Appeals affirmed. Robinson v. State, No. 99,699, 2009 WL 3018065 (Kan. Ct. App. Sept. 18, 2009)(Robinson II). The Kansas Supreme Court denied review on February 10, 2010.

## II. ANALYSIS

This court's ability to consider collateral attacks on state criminal proceedings is circumscribed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the highly deferential standard set forth in AEDPA, if petitioner's claim has been decided on the merits in a state court, a federal habeas court may only grant relief under two circumstances: 1) if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or 2) if the state court decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2).

-3-

A state court decision is "contrary to" Supreme Court precedent in two circumstances: (1) when "the state court applies a rule that contradicts the governing law set forth in [the Court's] cases"; or (2) when "the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from" that reached by the Court. <u>Williams v. Taylor</u>, 529 U.S. 362, 406, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court decision constitutes an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413, 120 S. Ct. 1495. Thus, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411, 120 S. Ct. 1495; <u>see also</u> <u>Thomas v. Gibson</u>, 218 F.3d 1213, 1219-20 (10th Cir. 2000) (discussing <u>Williams</u>).

Finally, a state prisoner seeking habeas relief based on alleged erroneous factual determinations must overcome by clear and convincing evidence the presumption of correctness afforded state court factual findings. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Smith v. Mullin</u>, 379 F.3d 919, 924-25 (10th Cir. 2004).

<u>Hamilton v. Mullin</u>, 436 F.3d 1181, 1186 (10th Cir. 2006). An inherent limitation to review under § 2254 is that a habeas court will only consider alleged violations of <u>federal</u> law. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80 (1991). Moreover, the court will not normally consider federal questions unless they have first been presented to the state courts. <u>Picard v. Connor</u>, 404 U.S. 270, 277-78, 92 S. Ct. 509, 513 (1971); <u>but see</u> 28 U.S.C. § 2254(b)(2) (permitting <u>denial</u> on the merits, despite failure to exhaust state remedies).

-4-

On direct appeal of his conviction and sentence, petitioner asserted the following six errors: 1) prosecutorial misconduct in eliciting testimony from the victim's daughter during trial; 2) the trial court erred in allowing witnesses to improperly bolster Hamilton's testimony; 3) ineffective assistance of counsel; 4) there was insufficient evidence to sustain a conviction; 5) cumulative error denied him a fair trial; and 6) the trial court erred in the calculation of petitioner's sentence. Br. of Appellant in Robinson I. In his K.S.A. 60-1507 appeal, petitioner raised the same errors as his direct appeal and, in addition, added the following to his claim of ineffective assistance of counsel: 1) failing to secure the surveillance videotape at the Argosy Casino before it was erased; 2) for stating during closing arguments that Robinson was not named in the 911 call when in fact Robinson was named in the tape; 3) for failing to explore a possible plea bargain; 4) for failing to request a continuance to secure the presence of an alibi witness; 5) counsel appointed for petitioner's postrial motion was ineffective for failing to subpoena trial counsel to testify at the hearing; and 6) the police acted in bad faith by failing to preserve the surveillance video. Br. of Appellant in Robinson II.

Petitioner's application for federal habeas relief states eight grounds for relief. (Doc. 1). Petitioner has raised the following issues: 1) prosecutorial misconduct in eliciting testimony from the victim's daughter during trial; 2) the trial court erred in allowing witnesses to improperly bolster Hamilton's testimony; 3) the police acted in bad faith by failing to preserve the surveillance video;  4) ineffective assistance of counsel; 5) the trial judge was biased

-5-

against him; 6) there was insufficient evidence to sustain a conviction; 7) cumulative error denied him a fair trial; and 8) the trial court erred in the calculation of petitioner's sentence. (Doc. 1).

## A.    Prosecutorial Misconduct

Petitioner claims that the prosecutor engaged in misconduct by eliciting testimony from Nelson, Cyrus's daughter, about Cyrus's hospitalization during the month before he died, and that the court erred in not granting a mistrial on this basis. The testimony was as follows:

> Q: Did you go and see your dad?
>
> A: Yes, I went straight out to KU Med. As soon as I found out, I ran straight out there.
>
> Q: Did you ever have an opportunity to speak to your dad or did he speak to you?
>
> A: No, he wasn't able to say anything.
>
> Q: How often did you visit him at the hospital?
>
> A: Everyday all day long I was there.
>
> Q: How long did that go on?
>
> A: For the whole month that he was in the hospital, I was there everyday.
>
> Q: Did he ever try to communicate with you in any way?
>
> A: Well, I would tell the doctor that he would-when I would talk to him, he would squeeze my hand, but then it could have been from reflex or something like that. But we would just hold each other's hand and he would just squeeze my hand.
>
> Q: Can you tell us what sort of treatment your father received at the hospital?
>
> A: I remember them calling me one night that they have to go and cut him right straight down the middle because he had a lot of fluids on him. So they have to go and put

something up in him to try to drain some of that fluid off of him. And also they put a trach in his throat so that they could keep the phlegm and stuff out of-

Robinson's attorney objected, and the following colloquy took place at the bench:

MR. CAHILL: My understanding from the prosecutors are they plan on calling medical doctors to testify as to the injuries and the treatment that was done upon Mr. Cyrus. I think right now given, especially that being the case, that this is far more prejudicial than probative. I think it's being put on to play to the sympathy of the jury and it's not adding anything to the factual nature of the evidence.

MS. SCHELL: Your Honor, this witness is merely giving an overview of what she experienced during that month.

THE COURT: What she experienced is not relevant.

MS. SCHELL: Well-

THE COURT: I would agree with the defense counsel that to go through her suffering is not relevant to the crime charged and, frankly, it-it's reversible, you know. It's not-it's not relevant to the crime charged what she went through. I mean, you can get to the fact that he died eventually, you know, and that sort of thing through her, but what she went through, I mean, him squeezing her hand and that sort of thing, that from what little I've been able to read upon the subject in case law, it's improper and it's reversible error and it's not relevant.

MS. SCHELL: The only thing I'm getting to with that, Your Honor, is that the defendant or-I'm sorry-that that victim was never able to give a statement to anybody and she's-she was there the entire time.

THE COURT: And that's a simple direct question that you can ask.

MS. SCHELL: Okay.

MR. CAHILL: Judge, I think it's incumbent upon me at this point-I know exactly the line of case law that you're talking about and I think it is-you know, the-the cow's out of the barn at this point and I think it is reversible error. I think we're playing upon the sympathies of the jury. That's been done. I'm gonna request a mistrial at this time.

THE COURT: I don't think it has reached the extent that I would feel justify in granting you a mistrial,

> frankly. I think-I didn't know the line of questioning
> where she was going with. It's okay to touch upon that
> subject and then to move on and I think your objection was
> made in a timely fashion when it became apparent that we
> weren't just gonna touch on it. We were gonna stand around
> awhile. And I think it's a timely objection. Now, I will-we
> can handle this several ways. I'm not gonna grant your
> motion for a mistrial, but if you want me to admonish the
> jury and tell them not to consider the mental anguish of
> the decedent's family, I mean, I can do that.

Robinson I, 2005 WL 1868889 at *2-3.

Generally, a prosecutor's conduct requires reversal of a state conviction only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Miller v. Mullin, 354 F.3d 1288, 1293 (10th Cir. 2004)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)). In considering a claim of prosecutorial misconduct, the court considers "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998)(quotation omitted).

The Kansas Court of Appeals found that the last question to Nelson was improper because it sought information beyond the question of whether Cyrus communicated anything to his daughter during his last month of life. Robinson I, 2005 WL 1868889 at *3. The court concluded, however, that the error did not deny petitioner's right to a fair trial because the testimony was brief and not overly dramatic. The court agrees. Nelson's testimony about Cyrus's stay in the hospital was brief in comparison with the rest of her testimony. Nelson testified about the contents of Cyrus's home, the baseball bat, items that were missing from the home and her interactions with Cyrus on the day of the crime. (Tr., Vol. VII at 238-256). "Any improper

comments, interspersed with this relevant evidence, did not affect the jury's verdict or deny [petitioner] a fair trial." Spears v. Mullin, 343 F.3d 1215, 1246-47 (10th Cir. 2003)(finding that sympathetic comments from the victim's mother did not deny the petitioner a fair trial).

Accordingly, petitioner's application is denied on this claim.

## B. Prior Consistent Statements

Petitioner next asserts that the trial court erred in allowing admission of Hamilton's prior consistent statements to bolster Hamilton's testimony before she testified. During trial, the state called a police officer, a paramedic and a detective, to testify about statements Hamilton made to them about being assaulted by petitioner. Petitioner's trial counsel, however, objected only on the basis of hearsay. Respondent argues that this issue is procedurally defaulted.

When a federal habeas petitioner's claim has been defaulted in state court on an independent and adequate state ground, federal habeas courts will not generally address the issue. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Klein v. Neal, 45 F.3d 1395, 1397 (10th Cir. 1995) ("It is now beyond cavil that the adequate and independent state ground doctrine is fully applicable to federal court review of habeas corpus petitions."). "A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision. For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims." Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir. 1998). Under those circumstances, a federal habeas court will only consider a claim if the petitioner can demonstrate "cause and

prejudice or a fundamental miscarriage of justice." English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998).

The Kansas Court of Appeals held that issues not raised before the trial court cannot be raised on appeal, relying on State v. Williams, 275 Kan. 284, 288 (2003). The court also held that any error in admitting the testimony was harmless because it would have been admissible after Hamilton testified, citing State v. Clark, 22 Kan. 65, 71 (1977). It is clear that the Kansas Supreme Court determined this issue adversely to petitioner on an independent state ground. The court's decision was based on Kansas precedent of refusing to hear issues on direct appeal where the defendant failed to object and in fact approved of the procedure utilized by the trial judge. The Court did not consider the merits of petitioner's claim. Thus, petitioner's claim is not reviewable in a collateral proceeding.

Therefore, petitioner's claim is procedurally defaulted, and may only be considered by this court upon a showing of cause for the default and resulting prejudice, or in order to prevent a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. Cause for default must be some objective factor, external to petitioner and his counsel, "something that cannot fairly be attributed to [them]." Id. at 753. "Examples of such objective factors include a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995)(internal quotations and citations omitted). Petitioner has made no such allegation of cause, and the court cannot find any basis in the petition to give cause for procedural default of ground two. Ineffective assistance

of counsel can be cause for procedural default, <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). However, the exhaustion doctrine requires "that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." <u>Id.</u> at 489. Petitioner has not raised an ineffective assistance of counsel claim with regard to his counsel's objection to Hamilton's testimony.

Moreover, petitioner cannot show actual prejudice by challenging evidentiary rulings. <u>See id.</u> at 494 ("The habeas petitioner must show not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."). Finally, a fundamental miscarriage of justice in this context means that petitioner is probably innocent of the crime. <u>Phillips v. Ferguson</u>, 182 F.3d 769, 774 (10th Cir. 1999). Although the evidence against petitioner was only circumstantial, it was significant in volume and far more than was necessary to permit the jury to convict him of the crimes charged beyond a reasonable doubt. Hence, the court finds no fundamental miscarriage of justice.

Petitioner's request for relief on this ground is denied.

**C.    The Police Acted in Bad Faith**

Petitioner claims in his third ground that the police acted in bad faith by failing to secure the Argosy casino video tape after the crime. Respondent argues that this issue is procedurally defaulted. Petitioner failed to raise this issue on direct appeal and instead, presented it to the state courts in his motion for ineffective assistance of counsel. The Kansas Court of Appeals declined to review

this issue on the merits. <u>Robinson II</u>, 2009 WL 3018065 at *3. It is clear that the Kansas Court of Appeals determined this issue adversely to petitioner on an independent state ground. The court's decision was based on the Kansas Supreme Court's ruling that a petitioner cannot use a proceeding under K.S.A. 60-1507 for trial errors. The court did not consider the merits of petitioner's claim and considered no federal precedent of any kind in reaching its determination. Thus, the Kansas Court of Appeals relied on an independent and adequate state ground in finding that the relief petitioner sought was not available.

Therefore, petitioner's claim is procedurally defaulted, and may only be considered by this court upon a showing of cause for the default and resulting prejudice, or in order to prevent a fundamental miscarriage of justice. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S. Ct. 2546 (1991). Petitioner has neither alleged nor shown cause and prejudice. Therefore, petitioner has not overcome the procedural default. Moreover, the court has found that no fundamental miscarriage of justice exists.

Petitioner's claim of bad faith by the police is accordingly procedurally defaulted. Petitioner's application for habeas corpus relief on this ground is denied.

**D.    Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel in violation of the Sixth Amendment requires petitioner to show that 1) his counsel's performance fell below an objective standard of reasonableness; and 2) but for his counsel's unreasonable errors, there is a reasonable probability that the outcome of the proceeding would have been

different. <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

In evaluating the performance of trial counsel, the Supreme Court provided the following guidance:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, <u>a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."</u> See <u>Michel v. Louisiana</u>, <u>supra</u>, 350 U.S., at 101, 76 S. Ct., at 164.
>
> . . .
>
> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

<u>Strickland</u>, 466 U.S. at 689-90, 104 S. Ct. at 2065-66 (emphasis added). Thus, under this standard, counsel's performance is presumed competent, and petitioner bears the burden of rebutting that presumption.

-13-

### 1. Counsel was Inadequately Prepared

First, petitioner asserts that his trial counsel was not prepared at trial. Petitioner, however, does not specify how his counsel was inadequate and the trial record demonstrates that petitioner did not make any complaints regarding counsel's performance. Moreover, petitioner has failed to establish how he has suffered any prejudice. The Kansas Court of Appeals' decision was therefore not an unreasonable application of Strickland.

### 2. Right to Testify

Next, petitioner states that his counsel was ineffective for refusing to allow him to testify. The record, however, shows that the court informed petitioner as to his right to testify and petitioner stated that he did not wish to testify. At the hearing held before the trial court on petitioner's motion for a new trial, petitioner testified that his counsel forced him to say that he did not wish to testify. The trial court did not find petitioner's testimony to be credible. The Kansas Court of Appeals upheld this determination. Petitioner offers no further argument in support of his position in his petition. Therefore, the Kansas Court of Appeals' decision was not an unreasonable application of Strickland.

### 3. Witness Testimony

Plaintiff further asserts that his counsel was ineffective for failing to call an alibi witness and failing to investigate the victim. The testimony given by petitioner at a hearing on his motion reflects that his trial counsel could not locate the alibi witness and that the evidence pertaining to the victim was character evidence. (Tr. Vol. X at 24-26). Trial counsel cannot be ineffective for the

failure to call a witness when he attempted to find that witness and he could not be located. As to the victim character evidence, the Kansas Court of Appeals held that the evidence was not admissible and plaintiff does not offer any argument to the contrary in his petition. Therefore, the Kansas Court of Appeals' decision was not an unreasonable application of <u>Strickland</u>.

### 4. DNA Evidence

Petitioner next asserts that trial counsel was ineffective for failing to introduce DNA evidence. The DNA evidence, however, only consisted of blood samples belonging to the victim. Therefore, petitioner has not demonstrated that the failure to introduce this evidence was prejudicial.

### 5. Sleeping Jurors

At some point during the trial, one of the jurors fell asleep. Petitioner's trial counsel alerted the court and the jury was thereafter closely observed. Petitioner has failed to allege that there were other instances of juror inattentiveness. Therefore, he has again failed to demonstrate prejudice.

### 6. Video Evidence

Finally, petitioner asserts that his counsel was ineffective for failing to recover a surveillance tape from the Argosy Casino. The tape, however, was reportedly destroyed prior to trial counsel being appointed in petitioner's case. Therefore, trial counsel cannot be held to be ineffective for failing to subpoena an item that was no longer in existence.

Accordingly, the Kansas Court of Appeals' decision was not an unreasonable application of <u>Strickland</u>. Petitioner's application for

habeas corpus relief on his claim of ineffective assistance of counsel is denied.

### E.   Trial Judge Bias

In his fifth claim of error, petitioner asserts that the trial judge was biased against him and had formed an improper opinion of petitioner's guilt.  The Kansas Court of Appeals held as follows with respect to this claim:

> On October 12, 2006, Robinson filed a K.S.A. 60-1507 motion alleging ineffective assistance of counsel, bad faith on the part of the trial court, and bias by the judge. . . On appeal, Robinson claims the district court erred in summarily denying his motion without holding an evidentiary hearing.  Specifically, Robinson argues that (1) he received ineffective assistance of trial counsel; (2) he received ineffective assistance of counsel at the motion for new trial; and (3) the police acted in bad faith and violated his due process rights.  **The other issues raised in Robinson's motion have not been argued in his appellate brief, so they are deemed abandoned.** See State v. Walker, 283 Kan. 587, 594, 153 P.3d 1257 (2007).

Robinson II, 2009 WL 3018065 at *1 (emphasis supplied).

It is clear that the Kansas Court of Appeals determined this issue adversely to petitioner on an independent state ground.  The court's decision was based on the Kansas Supreme Court's ruling that a petitioner has abandoned issues that are not argued.  The court did not consider the merits of petitioner's claim.  The court considered no federal precedent of any kind in reaching its determination.  Thus, the Kansas Court of Appeals relied on an independent and adequate state ground in finding that the relief petitioner sought was not available.  Robertson v. Roberts, No. 09-3445, 2010 WL 2760591, *8 (10th Cir. July 14, 2010)("Kansas courts hold that an issue not briefed by the appellant is deemed waived or abandoned [] and we see no reason not to consider this default an independent and adequate

state law ground for denying habeas relief.")(internal citations omitted).

Therefore, petitioner's claim is procedurally defaulted, and may only be considered by this court upon a showing of cause for the default and resulting prejudice, or in order to prevent a fundamental miscarriage of justice. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S. Ct. 2546 (1991). Petitioner has neither alleged nor shown cause and prejudice. Therefore, petitioner has not overcome the procedural default. Moreover, the court has found that no fundamental miscarriage of justice exists.

Petitioner's claim of trial judge bias is accordingly procedurally defaulted. Petitioner's application for habeas corpus relief on this ground is denied.

### F.   Sufficiency of the Evidence

When considering sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution. <u>Spears v. Mullin</u>, 343 F.3d 1215, 1238 (10th Cir. 2003). Under that standard, habeas relief may only be granted if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Id.</u> (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)). The jury's determination must be accepted as long as it is within the bounds of reason. <u>Messer v. Roberts</u>, 74 F.3d 1009, 1013 (10th Cir. 1996). Though it involves factual issues, a challenge to the sufficiency of the evidence is reviewed for legal error. <u>Id.</u> Accordingly, under AEDPA the court is limited to determining whether the Kansas Supreme Court reasonably applied the <u>Jackson</u> standard in this case. <u>Id.</u>

Under Kansas law, in order to convict petitioner of second degree

murder, the jury had to conclude that he killed Cyrus intentionally under circumstances showing extreme indifference to human life. See K.S.A. 21-3402. To convict petitioner of aggravated battery, the jury had to conclude that he caused bodily harm to Hamilton with a deadly weapon. See K.S.A. 21-3414. Petitioner essentially argues that the evidence was not sufficient to convict him because Hamilton and Suber were not credible witnesses and he did not have a motive to commit the crime. To prove that petitioner committed the murder, the State introduced evidence from Hamilton that she was on the phone talking to Suber when petitioner arrived at Cyrus's house. Hamilton testified that she heard a thump in the living room and then petitioner entered the bedroom and struck Hamilton in the back of the head with a baseball bat. Petitioner hit her twice more with the bat, breaking one of her fingers. Hamilton called out petitioner's name and Suber heard this over the phone and left his home immediately to return to Cyrus's house. Hamilton found Cyrus on the floor with the side of his face covered with blood and called 911. The court finds that based on all the above evidence, the jury's determination that petitioner killed Cyrus was rational. The jury chose to believe the testimony of Hamilton and Suber over petitioner's arguments that they were lying. That was the jury's prerogative. The court cannot make credibility determinations on review. The evidence is circumstantial, but it cannot be said that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. at 319 (1979).

The Supreme Court of Kansas concluded that the evidence was sufficient to uphold the jury verdict. Robinson I, 2005 WL 1868889

at *3.  That conclusion was neither contrary to, nor an unreasonable application of, <u>Jackson</u>.  Accordingly, petitioner's application is denied on this claim.

### G.  Cumulative Error

Petitioner's seventh ground of error is that the cumulative effect of the errors denied him of his constitutional right to a fair trial.  The Kansas Supreme Court determined that there was no cumulative error because Nelson's testimony regarding the hospital care was harmless and the admission of Hamilton's prior consistent statements was inevitable.  <u>Robinson I</u>, 2005 WL 1868889 at *6.  The court agrees.  Petitioner has failed to establish that the trial court committed reversible error during his trial.  Therefore, petitioner's application is denied on this claim.

### H.  Sentence

In his last claim of error, petitioner specifically claims that the state district court violated his Sixth and Fourteenth Amendment rights by imposing an enhanced sentence using his past criminal convictions without requiring that those convictions be pled in the complaint and thereafter proven to a jury beyond a reasonable doubt. He relies on <u>Apprendi v. New Jersey</u>, a U.S. Supreme Court case that had clearly established how the Sixth and Fourteenth Amendments applied to "sentence-enhancing facts" at the time of petitioner's conviction, to support his claim.  <u>See</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

In <u>Apprendi</u>, the Supreme Court addressed whether the Due Process Clause of the Fourteenth Amendment required a jury, under Sixth Amendment trial procedure, to find all facts that might increase a

defendant's prison sentence beyond the maximum prison sentence otherwise provided by statute. Allowing an explicit exception for criminal history in accordance with Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), the Court held that "[o]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490 (emphasis added).

The law, as laid out by the Supreme Court, is clear. Recidivism may be used by the court in calculating a defendant's sentence, even if defendant's criminal history makes the sentence imposed longer than the statutory maximum provided. Almendarez-Torres, 523 U.S. at 243. Because criminal history is considered a sentencing factor and not an element of a charged crime, the state "need *not* allege defendant's prior conviction in the indictment." Id. The "procedural safeguards attached to [the] 'fact' of [petitioner's] prior conviction" as well as petitioner's opportunity to "challenge the accuracy of that 'fact'" during sentencing "mitigate[] the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." Apprendi, 530 U.S. at 488. A judge may find a "fact" of prior conviction and use it in sentencing without running afoul of the Fourteenth or Sixth Amendments.

The Court is aware that some Supreme Court justices have since criticized the Almendarez-Torres decision. See Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005) (Thomas, J., concurring). However, the Supreme Court has not

overruled it in any of its later decisions. See <u>U.S. v. Moore</u>, 401 F.3d 1220, 1224 (10th Cir. 2005) (noting that <u>Almendarez-Torres</u> is still good law). As such, this Court is bound to follow current U.S. Supreme Court precedent.

For petitioner's appeal, the Kansas Court of Appeals followed precedent established by the state's high court. <u>Robinson I</u>, 2005 WL 1868889 at *6. The appeals court cited <u>State v. Ivory</u>, 273 Kan. 44, 41 P.3d 781 (2002), in support of its holding that the trial court had not violated petitioner's Sixth and Fourteenth Amendment rights. <u>Id.</u> In <u>Ivory</u>, the Supreme Court of Kansas identified the same U.S. Supreme Court case law and principles discussed above and concluded that prior convictions could be used in sentencing without being submitted to and decided by a jury. 273 Kan. at 46-47. In relying on the state supreme court's reasonable interpretation and application of federal law, the Kansas Court of Appeals' decision was neither contrary to nor an unreasonable application of the law as established by the Supreme Court of the United States.

Therefore, petitioner's application is denied on this claim.

### III. CONCLUSION

Petitioner's application for habeas corpus is denied. (Doc. 1).

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion

to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this __27th__ day of May 2011, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE